UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

David C. Trujillo,

     Plaintiff,

v.                                   No. 1:23-cv-00314-DHU-SCY

CITY OF ALBUQUERQUE,
OFFICER STEPHEN WALSH (3109),
OFFICER CHRISTOPHER MAES (3892),
OFFICER JONATHAN TRUJILLO (5699),
OFFICER ERIC ENDZEL (3923),
OFFICER JUSTIN JONES (5214),

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment Based Upon Qualified Immunity, filed on December 22, 2023. Doc. 36 ("Motion"). Through their Motion, Defendants, individual police officers and their employer, the City of Albuquerque, seek to have all claims brought against them by Plaintiff David Trujillo ("Plaintiff") dismissed, including claims brought pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations and state law claims based on the New Mexico Civil Rights Act and the New Mexico Tort Claims Act. *Id*. The Court held a hearing on the Motion on April 24, 2024, at which counsel for all parties were present. Doc. 50. Having considered the parties briefs, the record of the case, and the relevant and applicable law, the Court **GRANTS** Defendants' Motion on the claims brought pursuant to §1983 against the individual officers and the City of Albuquerque and **DENIES** Defendants' Motion as to the remaining state law claims, which will be remanded to state court.

1

**I.**
**FACTUAL BACKGROUND**

This case arises from the August 25, 2022, non-lethal shooting of Plaintiff David C. Trujillo ("Plaintiff") with 40mm rubber bullets by Defendant Eric Endzel, an officer and detective with the Albuquerque Police Department ("APD"). The incident occurred after Plaintiff was approached by several APD detectives as he sat outside a public swimming pool. The following facts are either undisputed or, where disputed, construed in the light most favorable to the Plaintiff as the nonmoving party on summary judgment. *See Simms v. Okla. ex. rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999) (The Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party"). Moreover, because this case involves the assertion of qualified immunity, where disputed, the Court adopts Plaintiff's version of the facts for purposes of its analysis. *See Emmett v. Armstrong*, 973 F.3d 1127, 1130 (10th Cir. 2020).

1. On August 17, 2022, a felony arrest warrant was issued for Plaintiff on charges of Aggravated Assault Against a Household Member, Resisting/Evading/Obstructing an Officer, a violation of a Temporary Restraining Order, and Traffic Violations. Undisputed Material Fact ("UMF") 1.[1]

2. Defendant Endzel, a detective with the Albuquerque Police Department's Investigative Support Unit, was tasked, along with other Albuquerque Police Department detectives in the same unit (collectively the "APD Officer Defendants" or "APD Officers"), with locating and apprehending Plaintiff. UMF 3.

---

[1] The Court refers to Defendants' enumerated Undisputed Material Facts, Doc. 36 at 5-29, as "UMF," followed by its corresponding paragraph number, and Plaintiff's Additional Facts, Doc. 42 at 2-4, as "PAF," followed by its corresponding paragraph number.

3.  Seven days later, on August 25, 2022, Plaintiff was observed by the APD Officer Defendants outside the Highland Swimming Pool parking lot in Albuquerque, New Mexico, near a vehicle matching the description of one he was believed to be driving. The vehicle appeared inoperable. UMF 7.

4.  Plaintiff walked to the west entrance of the Highland Pool and sat on a handicapped ramp. UMF 9, 10.[2]

5.  After Plaintiff had sat on the ramp for a few minutes, the APD Officer Defendants determined that, since the pool was not busy, they would attempt to apprehend Plaintiff. UMF 11.

6.  One of the APD officers at the scene, Defendant Justin Jones, was positioned to the south of where Plaintiff was located to prevent him from going inside the pool to try and evade apprehension. UMF 12. Defendant Jones did not later participate in placing Plaintiff into handcuffs or taking him into custody. UMF 13.

7.  All of the APD officers at the scene were wearing department issued vests with police placards on the front and rear and a Badge of Office facing forward. UMF 14.

8.  Three of the APD officers, Defendant Stephen Walsh, Defendant Christopher Maes, and Defendant Jonathan Trujillo, gave commands for Plaintiff to put his hands up. UMF 15.

9.  Plaintiff responded by telling the APD officers that he could not raise his arm very well because it had been injured in a car accident. PAF 14; Plaintiff's Second Amended Complaint, Doc. 32, ¶11 ("Compl.").

10. Another APD officer, Defendant Eric Endzel, then arrived at the scene in his vehicle. Defendant Endzel got out of his vehicle and within seconds of arriving at the scene, fired a 40mm

---

[2] Plaintiff disputes only part of Defendants' UMF 10. He does not dispute that he sat on a handicapped ramp. PAF 7.

rubber bullet at Plaintiff, striking his knee and causing him to fall to the ground. Doc. 42 at 1; Compl. ¶¶ 12, 13, 14.

11. Defendant Endzel then fired a second 40mm round, again hitting Plaintiff in the knee. Compl. ¶ 14; PAF 11.

12. Defendants Endzel, Walsh, and Trujillo then moved forward, and Defendant Trujillo placed Plaintiff in handcuffs. UMF 18.

13. At no time before or after he was shot by the 40mm bullets, did Plaintiff attempt to flee the scene or avoid arrest; nor did he verbally threaten officers in response to their attempts to effectuate an arrest. PAF 16, 17.

14. None of the APD officers at the scene attempted to use de-escalation techniques prior to Plaintiff being shot with the 40mm rubber bullets. PAF 19.

15. Plaintiff was visible by officers throughout the entirety of the incident prior to his arrest and asserts that he did not attempt to conceal himself from officers. PAF 8, 18.

16. After his arrest, Plaintiff's bag was searched by the APD officers and no weapons, firearms, or destructive devices were found. PAF 15.

## II.
## LEGAL STANDARDS

### A. Summary Judgment and Qualified Immunity

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 107 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material

fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 944 F.3d 1166, 1171 (10th Cir. 2010); *Simms*, 165 F.3d at 1326.

In cases involving the assertion of qualified immunity, the summary judgment standard is somewhat different. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("Because of the underlying purposes of qualified immunity, [the Tenth Circuit] review[s] summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v, Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). The onus is first on the plaintiff "to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotations and citation omitted); *Fogerty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). The first prong depends on whether the facts "taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655-56, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (internal citation and punctuation omitted); *Walker v. City of Orem*, 451 F.3d 1139, 1145 (10th Cir. 2006) (explaining that the threshold inquiry in the qualified immunity analysis is whether, taking a plaintiff's allegations as true, the officer in question violated the plaintiff's constitutional rights). The second

prong requires that preexisting Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, makes it apparent to a reasonable officer that the nature of his conduct is unlawful. *See Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017). A case need not be directly on point for a right to be clearly established because fact-to-fact comparison is not required when distinctions in the facts make no constitutional difference. *See Kerns v. Bader*, 663 F.3d 1173, 1186-87 (10th Cir. 2011). Instead, all that is required is "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (internal citation omitted).

If a "plaintiff successfully carries his two-part burden," the "defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *see also Pueblo Neighborhood Health Cntrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be properly denied." *Est. of Beauford v. Mesa City*, 35 F.4th 1248, 1262 (10th Cir. 2022) (internal quotations and citation omitted).

### III.
### DISCUSSION

Through his Second Amended Complaint, Plaintiff brings several claims against the various defendants in this case. First, Plaintiff asserts a claim under 42 U.S.C. §1983, alleging that the individual police officers who approached and arrested him outside the public pool violated his Fourth and Fourteenth Amendment right to be free from excessive force when they shot him twice with non-lethal 40mm rubber bullets. Compl. ¶¶ 34-39. Plaintiff also brings a claim under §1983 against Defendant City of Albuquerque, alleging that the municipality is liable to Plaintiff

because its policies, practices, and custom of allowing the use of excessive force resulted in the violation of his constitutional rights. *Id*. at ¶¶ 42-47. Finally, Plaintiff claims that Defendants are liable to him under the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1 through 41-4-30, and the New Mexico Civil Rights Act, NMSA 1978 §§ 41-4A-1 through 41-4A-13. *Id*. at ¶¶ 4, 7.

In their Motion, Defendants make several arguments in support of their request for summary judgment. First, the APD Officer Defendants assert a qualified immunity defense, arguing that none of their actions amounted to a constitutional violation and, even if this were the case, Plaintiff has not shown that they violated clearly established law and thus should have been aware of the unlawfulness of their actions. Doc. 36 at 10-18. Second, Defendants argue that because no constitutional violation occurred in the apprehension of Plaintiff, any constitutional claims against the City of Albuquerque are without merit. Doc. 36 at 18-20. Third, they assert that Plaintiff's claims under the New Mexico Civil Rights Act and the New Mexico Tort Claims Act also fail because there is no evidence that any of the individual Defendants violated Plaintiff's constitutional or statutory rights. Doc. 36 at 20.

## A. Defendants' Assertion of Qualified Immunity as to Constitutional Claims Against the APD Officer Defendants.

In their motion, each of the individual Defendants in this case assert qualified immunity and argue that they cannot be held liable on Plaintiff's claim of excessive force. As such, the burden shifts to Plaintiff to show that, viewing the facts in the light most favorable to him, Defendants violated a constitutional right, and that the right was clearly established at the time of the conduct. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Plaintiff responds that the individual APD Officer Defendants are not entitled to qualified immunity because they violated his Fourth Amendment rights by using excessive force when shooting at him twice with 40mm rubber bullets. Doc. 42 at 5. Additionally, he submits that Defendants had fair warning that it was

"unconstitutional to fire rubber bullets at Mr. Trujillo when no threat of force, fleeing movements, or resisting was exhibited by Mr. Trujillo in response to the Defendants' arrest attempts."  Doc. 42 at 6.

1)  **First prong of qualified immunity analysis: Whether the APD officers' conduct violated Plaintiff's constitutional rights.**

Plaintiff argues that his constitutional rights were violated when "Defendants unreasonably shot him with a 40 mm non-lethal rubber bullet, unreasonably shot him [a second time] with a 40 mm rubber bullet after he was laying on the ground, and by attempting to place Defendant owned ammunition on [him] in order to further justify their unlawful use of force." Doc. 42 at 5.[3]

Federal courts evaluate excessive force claims under an "objective reasonableness" standard, judged from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Pauly v. White*, 874 F.3d 1197 (10th Cir. 2017). In conducting that analysis, the court "focuses not on the officers' particular motivations, nor on the arrestee's perception of the intrusion, but on whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (internal citation omitted).  Reasonableness is evaluated under the totality of the circumstances and includes the consideration of the following factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

---

[3] Plaintiff does not further develop the argument that his constitutional rights were violated when Defendants found ammunition on the floor during Plaintiff's arrest that turned out to belong to one of the police officers at the scene.  The Court will therefore not address that issue.

a.  First factor under *Graham*: Severity of the crime at issue.

Defendants argues that the *Graham* factor related to the "severity of the crime at issue" weighs in their favor because, at the time force was used against him, Plaintiff was wanted on a felony warrant for charges including aggravated assault on a household member, fleeing law enforcement, and violation of a temporary restraining order.  Doc. 36 at 13.  In addition, note Defendants, each of the APD Officer Defendants were part of APD's Investigative Support Unit, which is tasked with locating and apprehending violent offenders, and as such each of them were aware of the felony warrant and Plaintiff's history of violence.  *Id*.

Plaintiff does not dispute that he was the subject of a felony warrant for the charges listed by Defendants but focuses his argument on the actions he took and did not take when the APD Officer Defendants attempted to effectuate his arrest, which he claims indicated he was not a threat.  Doc. 42 at 8-9.  In addition, argues Plaintiff, the crimes at issue were not crimes where officers could reasonably be worried or fearful that they would be harmed.  *Id*. at 9.  The crimes he was accused of committing, says Plaintiff, did not involve traditional weapons which would have given the officers a reason to be fearful - such as a gun, knife, or other hand-held weapon, but instead involved Plaintiffs' alleged use of a U-Haul truck.  *Id*. at 8.

The Court finds that the first *Graham* factor, the severity of the crime at issue, weighs in favor of the APD Officer Defendants.  This is not a case where the underlying criminal conduct was questionable or minimal.  *See Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (finding that the severity of the crime at issue weighed in favor of plaintiff because the underlying crime was unclear but, at best, amounted to "a minor crime such as reckless driving or driving while intoxicated").  Instead, there is no dispute that the APD Officer Defendants were looking for Plaintiff to take him into custody on a warrant that included several charges, including felony

charges related to violent conduct.  The arrest warrant authorized them to take Plaintiff into custody

for, among other things, aggravated assault with a deadly weapon, which provided a reasonable

basis to believe Plaintiff was willing to resort to violence if necessary.  Whether the violent felony

he was accused of involved a gun, a knife, or a car, it was still sufficiently serious to justify extreme

care by the APD Officer Defendants as they approached Plaintiff.  *See S.R. Nehad v. Browder*, 929

F.3d 1125, 1136 (9th Cir. 2019) (explaining that "the government's interest in apprehending

criminals, and particularly felons, [is] a factor 'strongly' favoring the use of force") (quoting *Miller*

*v. Clark County*, 340 F.3d 959 (9th Cir. 2003)).

    b.  Second factor under *Graham*: Whether the suspect posed an immediate threat to the
        safety of officers or others.

The second *Graham* factor, "whether the suspect posed an immediate threat to the safety

of officers or others[,] is the most important factor in determining the objective reasonableness of

an officer's use of force." *Packard v. Budaj*, 86 F.4th 859, 866 (10th Cir. 2023) (internal citation

omitted). The evaluation of this factor requires that the Court "look at whether officers [or others]

were in danger at the precise moment that they used force." *Armstrong*, 973 F.3d at 1136 (internal

citation omitted).[4]

---

[4] Further, in determining the degree of threat facing officers under the second *Graham* factor, the
Tenth Circuit has instructed district courts to consider a number of other non-exclusive factors. *See*
*Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2017). The *Larsen* factors
include (1) whether the officer ordered the suspect to drop his weapon, and the suspect's
compliance with police commands; (2) whether any hostile motions were made with the weapon
towards the officers; (3) the distance separating the officers and suspect; and (4) the manifest
intentions of the suspect.  *Id.*  The Court finds that these factors are not entirely applicable to the
Court's analysis in this case.  The first and second *Larsen* factors are inapplicable because there is
no dispute that Plaintiff did not have a weapon in his hand and so could not have made any hostile
motions with that weapon. As to the third *Larsen* factor,  neither party discusses the distance
separating the officers from Plaintiff at the time Defendant Endzel discharges his firearm, but the
lapel video evidence in this case shows that the officers and Plaintiff were at least 30 feet apart.
As to the manifest intentions of Plaintiff, there is no dispute that Plaintiff did not verbalize any
threats to harm the officers, himself, or any other person prior to the time force was used against

Defendants argue that during the course of apprehending Plaintiff, Plaintiff concealed himself behind a rolling suitcase, repeatedly failed to obey officer commands to put his arm up and make his hands visible, and seemed, at times, to be reaching his hand to his waistband. Doc 36 at 1-2, 14.  Defendants also allege that, prior to the incident at the pool, Defendant Endzel had reached out to Plaintiff on social media using an undercover account.  *Id.* at 3. During the exchanges between Plaintiff and Endzel, Plaintiff stated that a car across the street was making him nervous and that he was about to shoot BB's at it.  *Id*. at 14.  Defendant Endzel relayed this information to the other Defendant officers at the scene, making them aware that Plaintiff might be in the possession of a BB gun.  Doc. 36-3 at ¶7.  In addition, note Defendants, information in the database known as the National Crime Information Center (NCIC) indicated that Plaintiff was "armed and dangerous." *Id*. at 13-14.

Plaintiff disputes Defendants' version of events.  According to Plaintiff, there is no evidence that there was any communication between Defendant Endzel and Plaintiff prior to the time of the non-lethal shooting and no proof that the "Mr. Trujillo" on any such social media communication was in fact Plaintiff.  Doc. 42 at 3.  Plaintiff also asserts that, even if it were true that he had a BB gun at some point prior to the incident, that information would not have led a reasonable officer to shoot him twice with rubber bullets when officers at the scene were armed with much more dangerous weapons, wore protective gear, and were positioned behind vehicle doors.  *Id*. at 9.  Plaintiff also contends that he complied with the officers and told them that he was unable to lift one of his arms.  *Id*. at 4, PAF 14.  At no point did any of the officers ask him to come out from where he was sitting.  *Id*. at 7.  Plaintiff further contends that he did not threaten

---

him by Detective Endzel.  To the extent the *Larsen* factors may be applicable in this case, the Court finds that they weigh in favor of Plaintiff.

the officers at the scene, he did not display a weapon at any time, and did not reach for his waistband. *Id.* at 4, PAF ¶¶ 9, 16. In addition, alleges Plaintiff, he did not attempt to flee the scene and he was visible by officers throughout the entirety of his arrest. *Id.*, PAF ¶¶ 17, 18. Plaintiff also disputes that there is no information in the NCIC providing in what context or when in time he was considered "armed and dangerous," such that a reasonable officer would not have relied on that information. *Id.* at 2. In sum, Plaintiff maintains that, "An armed officer in a bullet proof vest, standing behind a car door objectively would not have a reason to be fearful of a man who could not lift his arm up, sitting in the open and in a public location, saying to officer that his arm was hurt." *Id.* at 9.

While the Court recognizes that officers need not wait until a weapon is aimed at them before taking precautionary actions and the Tenth Circuit has counseled against second-guessing the on scene decisions made by officers in difficult situations, *see Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009), it remains the case that the Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774–75, 167 L. Ed. 2d 686 (2007) (internal quotations and citation omitted). "In qualified immunity cases, this usually means adopting the plaintiff's version of the facts," unless the plaintiff's version of facts is so "blatantly contradicted by the record, [ ] that no reasonable jury could believe it." *Id.* at 380. Here, Plaintiff alleges that at the time force was used against him, he was sitting down, was trying to comply with commands given by officers, was not reaching for a weapon or taking any action that could reasonably be interpreted as doing so, was not concealing himself from officers, was not attempting to flee, and did not make any threatening movements or gestures toward the officers at the scene. The Court has carefully reviewed the lapel videos of the APD Officer Defendants which recorded

12

the incident in question and finds insufficient evidence to conclude that Plaintiff's version of events is so "blatantly contradicted" by the video evidence that it can be disregarded on summary judgment. At the same time, however, the Court believes that a jury could resolve the issue in favor of the APD Officer Defendants and conclude that, under the totality of the circumstances, Plaintiff posed a threat their safety. The Court thus determines that, as to the second factor under *Graham*, there are significant disputed issues of fact regarding whether Plaintiff posed an immediate threat to the safety of officers or others.

    c. <u>Third factor under *Graham*: Whether the suspect was actively resisting arrest or attempting to evade arrest by flight</u>.

As to the final *Graham* factor, the Court finds there is no evidence showing that Plaintiff was actively resisting or attempting to evade arrest at the time Defendant Endzel fired two non-lethal rounds at him. At the hearing on this Motion, Defendants argued that not complying with officer's instructions, appearing to potentially reach for a weapon, and concealing himself all constitute passively resisting arrest by Plaintiff. The problem with Defendants' argument is two-fold. First, at this stage of the summary judgment proceedings based on qualified immunity, the Court must view the evidence in the light most favorable to Plaintiff and he disputes that he acted in the manner described by Defendants. Second, the Court's review of the videotape recordings from the APD Officers' lapel video cameras provides no evidence that Plaintiff was attempting to flee or evade arrest at the time he was shot by Defendant Endzel. Furthermore, Defendants cite to no legal authority that supports the contention that failure to comply with orders, placing a hand near a waistband, or concealing oneself behind an object constitutes actively resisting arrest or attempting to evade arrest by flight under the *Graham* analysis. The Court finds that the last *Graham* factor weighs in favor of Plaintiff.

d.  Conclusion as to *Graham* analysis

Considering each of the factors under *Graham,* the Court concludes that the first factor weighs in favor of Defendants, the last factor weighs in favor of Plaintiff, and that there remain significant issues of disputed fact concerning the second and most important *Graham* factor.  For these reasons, given the totality of the circumstances in this case, the Court determines it should be left to a jury to resolve the factual disputes that would go to the objective reasonableness of the APD Officer Defendants' use of force.

**2) Second prong of qualified immunity analysis: Whether the constitutional right at issue was clearly established at the time the challenged conduct occurred.**

The Court's determination that there exist disputed and genuine issues of material fact as to whether the APD Officer Defendants violated Plaintiffs' constitutional rights does not end the qualified immunity inquiry.   The Court must next determine whether those rights were so clearly established that it would be "apparent to a reasonable officer that the nature of his conduct is unlawful." *Carabajal*, 847 F.3d at 1210.  As stated above, a case is not required to be directly on point to set out that a right is clearly established because a fact-to-fact comparison is not required when distinctions in the facts make no constitutional difference. *See Kerns*, 663 F.3d at 1186-87. What is required however, is that "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 584 U.S. at 104 (internal citation omitted).

Here, it is Plaintiff's burden to show that the APD Officer Defendants are not entitled to qualified immunity because the law was so clearly established that their alleged conduct would violate his constitutional rights.  *See Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) ("When a §1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff [to show that the constitutional right] was clearly established at the time of the defendant's conduct.") (citations omitted).  In his brief in response to Defendants' Motion, Plaintiff contends

that "Defendants had fair warning that it was unconstitutional to fire rubber bullets at [him] when no threat of force, fleeing movements, or resisting was exhibited by [him] in response to the Defendants' arrest attempts." Doc. 42 at 6. In support of his argument, Plaintiff claims that the

> Albuquerque Police Department's operating procedures require that de-escalation be used prior to force against an individual unless there are circumstances that require them to begin with force against someone. Common sense would also show that it was not necessary, without hindsight, to shoot Mr. Trujillo instead of simply approaching him and placing him in cuffs.

*Id.*

While this may be true, the Court finds that Plaintiff has not met his burden of showing that Defendants' conduct violated his clearly established constitutional rights under federal law. The Tenth Circuit Court of Appeals has consistently held that a violation of police procedures and regulations is insufficient to ground a §1983 action for excessive force. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005); *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir. 2005); *Medina*, 252 F.3d at 1133. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). While the Supreme Court has recognized that it is generally not necessary to find a controlling decision declaring the "very action in question ... unlawful," *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), it is not the case that a plaintiff in a §1983 case can meet the "clearly established" prong solely through the alleged violation of a standard operating procedure. In this case, neither in his brief nor at the hearing on the Motion, has Plaintiff pointed to a single case to support his argument that the law was sufficiently established such that it would make it clear to a reasonable officer that the conduct at issue was unlawful under federal constitutional law, and it is not the Court's role to

supply legal support for Plaintiff's position. *See Cordova*, 569 F.3d at 1191.  Because Plaintiff has

not met his burden as to the second prong of the analysis, the APS officer Defendants are entitled

to qualified immunity.[5]

The Court will therefore grant Defendants' Motion for Summary Judgment as to Plaintiff's

§1983 claims against the APD Officer Defendants.

**B.  *Monell* Claims Against Defendant City of Albuquerque.**

In his Second Amended Complaint, Plaintiff also brings a claim against Defendant City of

Albuquerque (the "City"), alleging that the City "directly caused the constitutional violations

suffered by Plaintiff" because the "conduct of the Officer Defendants was a direct consequence of

the policies, practices, and customs of the City of Albuquerque."  Compl. ¶ 43.   These types of

claims were first recognized by the Supreme Court in *Monell v. Dep't of Soc. Servs*., 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and are commonly referred to as "*Monell* claims."   In

*Monell*, the Supreme Court held that a plaintiff may sue a local governing body directly under

§1983 for constitutional violations pursuant to a body's policy, practice, or custom.  *Monell*, 436

U.S. at 690.

In the Motion before the Court, the City argues that summary judgment on Plaintiff's

*Monell* claim is appropriate because, according to the City's own post-incident Use of Force

Investigation, the APD Officer Defendants' actions were "in compliance with all applicable APD

policies, City, state or Federal Laws." Doc. 36 at 18.  Furthermore, argues the City, Plaintiff cannot

rely on the 2016 Court Approved Settlement Agreement (the "CASA") between the City and the

---

[5] To be clear, the Court makes no determination that, under the facts here, the law was not clearly established such that it would not have been apparent to a reasonable officer that using non-lethal force in this situation was unlawful.  The Court only determines that Plaintiff has not met his burden by not citing to any legal precedent in support of his argument.

United States Department of Justice as the basis for its *Monell* claim when the City has substantially complied with the CASA and Plaintiff has not stated a factual basis for his position that the same culture that existed in 2016 is still evident at APD.

In response, Plaintiff argues that the City can be held liable under §1983 because the APD Officer Defendants "violated [his] constitutional rights and Albuquerque Police Department customs are the moving force behind the excessive force used against [him during] his arrest." Doc. 42 at 9. According to Plaintiff, the CASA "is indicative of the corruption within the Albuquerque Police Department," and "it is also still active, showing the need for the United States Department of Justice to continue [its] involvement in regulating the Albuquerque Police Department." *Id*. at 10.

To the extent Plaintiff is arguing that the City is liable to him because its employees, the APD Officer Defendants, violated his constitutional rights, the Court disagrees. Municipal liability under *Monell* cannot be established on a theory of vicarious liability or respondeat superior. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The Court also rejects the City's contention that its own Use of Force Investigation proves there was no constitutional violations in this case and therefore there is no valid *Monell* claim. First, in the Tenth Circuit, municipal liability under *Monell* may exist without individual liability. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023). Thus, even though the APD Officer Defendants are shielded from liability on the grounds that Plaintiff has not met his burden of showing the law was clearly established, the City may still be held liable under *Monell* because the same qualified immunity analysis does not apply to municipalities. *See Cordova*, 569 F.3d at 1193–94. Second, it is for this Court to determine whether the APD Officer Defendants' actions amounted to a constitutional violation, and whether APD believes its officers fully

complied with its regulations is irrelevant to the issue, just as failing to comply with police regulations does not necessarily prove a constitutional violation. *See Hovatar v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation.").

The Court does agree, however, with Defendants' contention that Plaintiff has provided no evidence to create an issue of fact regarding the City's liability under *Monell*. To prove a *Monell* claim against a municipal entity like the City of Albuquerque, Plaintiff must show evidence of (1) an official policy or custom, (2) causation, and (3) deliberate indifference. *See Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 769 (10th Cir. 2013). The Tenth Circuit Court of Appeals has recognized the following as constituting an "official policy or custom" under *Monell*:

> (1) A formal regulation or policy statement; (2) and informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Lucas*, 58 F.4th at 1145 (quoting *Crowson v. Washington County State of Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020)).

Here, Plaintiff bases his *Monell* claim on his contention that there is an informal custom within APD of "corruption, inadequate training, and violence against the public . . . which continues even under scrutiny of the United States Department of Justice." Doc. 42 at 10. While this may be enough to show that Plaintiff has stated at least the first element necessary for a valid *Monell* claim, the problem with Plaintiff's claim is that he has not provided or cited to any evidence

that creates disputed issues of fact regarding the second and third requirement for a *Monell* claim – causation and deliberate indifference. *See Schneider*, l717 F.3d at 769. To establish causation, Plaintiff must show that the challenged policy or custom is "closely related to the violation of the plaintiff's federally protected right," which requires Plaintiff to "demonstrate a direct causal link between the municipal action and deprivation of federal rights." *Id.* at 770 (quoting *Brown*, 520 U.S. at 404). To show deliberate indifference, a plaintiff must provide evidence that the municipality had actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chose to disregard that risk of harm. *Id.* at 771 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

In this case, Plaintiff `relies solely on what he characterizes as a custom of excessive force by APD which led to the CASA in 2016 between the City and the United States Department of Justice. But Plaintiff provides no evidence that would directly link any such custom that existed prior to 2016 with the APD Officer Defendants' actions in the non-lethal shooting of Plaintiff in 2022, seven years later. Nor does Plaintiff allege or provide evidence that the City had notice that any of its actions after entering the CASA with the government would result in the violation of Plaintiff's constitutional rights and that it consciously or deliberately chose to ignore that risk. Plaintiff references online articles reporting that, statewide, New Mexico law enforcement officers killed 32 people in 2022, *see* Doc. 42 at 2, n.2, but goes no further to explain the direct connection between any action on the part of APD to those instances, much less to the alleged violation of Plaintiff's constitutional rights. Plaintiff also references an article reporting nationwide statistics of peopled killed by police officers as of September 2023, but again does not discuss or explain how that information directly links any custom by APD to the alleged violations of Plaintiff's constitutional rights in 2022. *Id*. at 2, n.3. It is the Plaintiff's burden to identify specific facts that

show the existence of genuine and disputed issues of material fact concerning his *Monell* claim against the City, *see Bacchus,* 939 F.2d at 891; a burden that he has failed to carry.

The Court will therefore grant Defendants' Motion for Summary Judgment as to Plaintiff's *Monell* claims against the City.

## C. The Court Will Not Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.

Plaintiff also brings state law claims against Defendants City of Albuquerque and the APD Officer Defendants under the New Mexico Civil Rights Act ("NMCRA") and the New Mexico Tort Claims Act ("NMTCA"). The NMCRA was enacted by the state legislature in 2021 and provides a cause of action to persons who "have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body." NMSA 1978 §§ 41-4A-3B. Any claims brought pursuant to the NMCRA can only be brought against a public body and the public body may be "held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." *Id*. at § 41-4A-3C. Significantly, there is no defense of qualified immunity under the NMCRA. *Id*. at § 41-4A-4.

The NMTCA both grants immunity to governmental entities and public employees acting with the scope of their duties and waives immunity from liability for certain torts enumerated in the statute. NMSA 1978 §§ 41-4-4. Relevant to Plaintiff's claims, the NMTCA waives immunity for personal and bodily injury caused by law enforcement officers resulting from, among other things, assault and battery. *Id*. at § 41-4-12.

At the hearing on the instant motion, both Plaintiff and the City took the position that, regardless of the Court's decision on Plaintiff's §1983 claims, the Court should exercise

20

supplemental jurisdiction over Plaintiff's claims brought pursuant to the NMCRA and the NMTCA. The Court must decline that invitation. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367). The Supreme Court has further advised that, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966). The Court finds this admonition particularly relevant here because the New Mexico state appellate courts have not yet had the opportunity to fully address and interpret the provisions of the NMCRA, which was enacted only four years ago. Because the remaining claims under the NMCRA and the NMTCA would require the Court to unnecessarily make decisions of state law, the Court will not exercise supplemental jurisdiction over these claims.

The Court will therefore deny Defendants' request to dismiss Plaintiff's state law claims and will remand the case to state court where they can be more appropriately addressed.

## IV.
## CONCLUSION

In sum, the Court finds there remain unresolved and disputed issues of material fact regarding whether the APD Officer Defendants violated Plaintiff's constitutional rights. However, the Court finds that Plaintiff has not met his burden of showing that, under the circumstances of this case, that right was clearly established at the time of the alleged conduct, and thus the APD Officer Defendants are entitled to qualified immunity. The Court also determines that Plaintiff has not met his burden of showing disputed issues of fact exist as to his *Monell* claim against the City, requiring summary judgment as to that claim. Because all federal claims establishing original

jurisdiction in this Court will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will therefore deny Defendants' request to dismiss those claims.

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment Based Upon Qualified Immunity, Doc. 36, is **DENIED** in part and **GRANTED** in part. For the reasons stated above, the case shall be **REMANDED** to the Second Judicial District Court for the State of New Mexico, County of Bernalillo. The Clerk of Court is accordingly directed to remand the instant action back to the Second Judicial District Court for the State of New Mexico, County of Bernalillo.

_____
UNITED STATES DISTRICT JUDGE